280 N.J. Super. 265 (1995)
655 A.2d 92
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AL-AMIN PASHA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 31, 1995.
Decided March 21, 1995.
*267 Before Judges BRODY and PAUL G. LEVY.
Roberts & Fielo, attorneys for appellant (Richard M. Roberts, of counsel and on the brief).
Al-Amin Pasha, appellant, filed a pro se supplemental brief.
Clifford J. Minor, Essex County Prosecutor, attorney for respondent (Debra G. Lynch, Assistant Prosecutor, of counsel and on the letter-brief).
The opinion of the court was delivered by BRODY, P.J.A.D.
Following a jury trial, defendant was convicted of first-degree murder, a violation of N.J.S.A. 2C:11-3a(1) or -3a(2), and first-degree attempted murder, a violation of N.J.S.A. 2C:11-3 and N.J.S.A. 2C:5-1. The judge imposed concurrent prison terms: life imprisonment for the murder, thirty years to be served before parole eligibility, and eighteen years for the attempted murder, six years to be served before parole eligibility. The jury also found defendant guilty of assault and weapon crimes, which the judge dismissed through merger.
Both crimes were committed with a shotgun in a single episode. The victim of the murder was Locksley Anderson, who was having an affair with Nadirah Pasha, defendant's sister-in-law and the victim of the attempted murder. The night before these crimes were committed Anderson and defendant's brother Salim, Nadirah's husband, had engaged in a violent fight over the affair. In the course of the fight, Anderson wounded Salim in the arm with a machete.
Although one might expect that defendant's defense would have suggested that Salim had committed the crimes, instead defendant's trial attorney argued in his summation that because Anderson had been engaged in criminal activities he was the victim of an organized crime execution. Defendant's attorney had represented Salim in the early stages of the police investigation of *268 these crimes. In his pro se brief, defendant argues persuasively that he was prejudiced by what appears to be the attorney's conflicting interests. We need not explore the point, however, because we are satisfied that the erroneous admission of prejudicial evidence requires a reversal of these convictions.
The only direct evidence of defendant's guilt was the testimony of Nadirah. She described how, on the night of the shootings, defendant shot and killed Anderson in the driveway of her mother's home and then shot at her and missed. Anderson had just driven her there from a tavern. Nadirah and the young child of the marriage were living with her mother, allegedly because Salim's domestic violence forced her to leave him. The State argued that defendant committed the crimes to avenge his brother.
Defendant's alibi defense was presented through his testimony and the testimony of three witnesses.
The inadmissible evidence was the State's rebuttal testimony of Carrie Boatwright, Nadirah's mother. The gist of her testimony was that on the day after the crimes Salim telephoned her and stated that defendant had done the shooting. In his earlier testimony as a defense witness, Salim had denied on cross-examination that he had made such a telephone call. He testified that he did not know who had done the shooting. The judge erroneously ruled that Boatwright's rebuttal testimony of Salim's telephone statement was admissible because it was inconsistent with his testimony that he had never made such a call.
The matter was initiated with a leading question put to Salim by the assistant prosecutor on cross-examination:
Q Did you tell Mrs. Boatwright that you didn't think your brother would go that far to shoot and kill someone?
A No, I didn't.
Q Did you call Mrs. Boatwright on the phone the morning after the shooting or the Saturday after the shooting and tell her that you know that [defendant] followed your wife and this man from the "Rainbow Club" on the 28th and shot them?
A No, I didn't.

*269 Q You never told Mrs. Boatwright that?
A No, I didn't.
When he asked Salim the question, the assistant prosecutor knew that Boatwright was prepared to testify that he had made such a statement on the telephone because she described it in a statement she had given the police. The assistant prosecutor, however, did not ask her about it when she was a State's witness, perhaps because he believed it was inadmissible hearsay. Defendant's attorney did not object to the question, perhaps because he believed that Salim would deny making the call and because an objection might have an adverse affect on the jury.
When on rebuttal the State offered Boatwright's testimony about the telephone call, defendant's attorney objected on the ground that it was inadmissible hearsay. The judge ruled that, though hearsay, the testimony was admissible under former Evid.R. 22(b).
Before discussing why that ruling was incorrect, we quote the portion of Boatwright's testimony that was inadmissible:
Q Now with reference to the phone conversation that occurred on Saturday, August 29th at around I think you said [in previous testimony] one o'clock?
A Yes, I did.
Q That was in the afternoon?
A Yes, it was.
Q What was the nature of that phone conversation?
A Salim Pasha called me referring to his wife Nadirah and he wanted to know how she was doing. I said:
"You have a hell of a nerve calling here."
I said:
"The man is dead."
Q Who said he was dead?
A I said:
"The man is dead."
I said:
"You have a hell of a nerve calling here and your wife is shot up."
And he said:
"I didn't know Jock,"  his brother  "would go that far."
*270 If offered to prove that defendant was the shooter, Salim's statement was clearly hearsay. The trial judge ruled that the statement was not being offered to prove its truth but rather as a prior inconsistent statement offered to impeach Salim's credibility.[1] As such, the judge ruled that it was admissible under Evid.R. 22(b) (now N.J.R.E. 613(b)) which provided:
As affecting the credibility of a witness ... (b) extrinsic evidence of prior contradictory statements, whether oral or written, made by the witness, may in the discretion of the judge be excluded unless the witness was so examined while testifying as to give him an opportunity to identify, explain or deny the statement.
The rule does not create an exception to the rule against hearsay. Rather, it permits a judge to exclude an otherwise admissible inconsistent out-of-court statement if the declarant, when a witness, had not been given an opportunity to deny having made the statement or to explain the apparent inconsistency.
The State now argues that the statement, though hearsay, nevertheless was admissible because it was the prior inconsistent statement of an adverse witness and thus qualified as an exception to the rule against hearsay. Evid.R. 63(1) (now N.J.R.E. 803(a)(1)). That rule provided in relevant part:
A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:
(a) Is inconsistent with his testimony at the hearing and is offered in compliance with the requirements of Rule 22(a) and (b).
A jury may consider evidence admitted under the rule as proof of the truth of the matter stated, not simply as affecting the credibility of the witness. State v. Provet, 133 N.J. Super. 432, 337 A.2d 374 (App.Div.), certif. denied, 68 N.J. 174, 343 A.2d 462 (1975).
In arguing that Salim's statement is admissible, the State overlooks the Rule 63(1) requirement that the statement is admissible only if it "would have been admissible if made by [the witness] while testifying." Unless the judge was satisfied that Salim was testifying from personal knowledge, Salim could not *271 have testified, "I didn't know [defendant] would go that far [as to kill Anderson]." Evid.R. 19 (now N.J.R.E. 602). There was no evidence here that Salim had personal knowledge that defendant shot Anderson. On the contrary, he testified that he had no such knowledge.
We realize that defendant's objection at trial did not go beyond his attorney's simple assertion that the statement was inadmissible hearsay. In our view, however, the error in admitting the statement was plain because it had the clear capacity to produce an unjust result. R. 2:10-2. Defendant's guilt turned largely on Nadirah's credibility. Without her testimony and the inadmissible evidence, there may have been sufficient suspicion that Salim was the shooter and that defendant may have been elsewhere at the time to have raised a reasonable doubt of defendant's guilt in the minds of the jurors. The importance to the State of the hearsay testimony is demonstrated in the assistant prosecutor's summation, which concluded with a prominent reference to its probative value:
Also, think about one of the last things you heard in this case. After the events of the 28th Salim Pasha was concerned about what happened to Nadirah. .. . And what did Salim say? These are important words that Salim said and words have meaning. I think these words are very significant....
What does Salim say? He says:
"I'm, sorry, Mrs. Boatwright. I didn't know [defendant] would go that far."
* * * * * * * *
[Defendant] didn't make those words, Salim made those words and without Salim in this case and without the events of August 27th [the date of the violent fight between Salim and Anderson] I submit to you the events of August 28th [the date of the crimes charged] are pretty hard to understand but they are not when you look at everything together.
Ladies and gentlemen, I do appreciate your patience in this case and I ask you to come back with verdicts of guilty against Mr. Pasha.
The judgment is reversed and the matter is remanded for retrial.
NOTES
[1] The judge did not instruct the jury that the statement had that limited effect.